FORTY FORT COAL CO. v. KIRKENDALL, Collector of Internal Revenue.

(District Court, M. D. Pennsylvania. December Term, 1915.)

No. 762.

1. COURTS ⬦262(1)—FEDERAL COURTS—DISTINCTION BETWEEN LAW AND EQUITY.

Jurisdiction at law and in equity are as separate in the federal courts as though administered by different tribunals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. ⬦262(1).]

2. COURTS ⬦354—VACATION—MOTIONS.

After the expiration of the term at which it was rendered a judgment cannot be vacated by the federal courts on mere motion.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 934; Dec. Dig. ⬦354.]

3. INTERNAL REVENUE ⬦9—CORPORATE TAXES.

The Corporation Excise Tax Law (Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 [Comp. St. 1913, § 6301]), imposing taxes on the income of corporations, provides for reasonable allowances for depreciation of corporate property. The property of a coal-mining corporation was depreciated for each ton of coal mined to the amount of 15 cents per ton. *Held*, that the

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

corporation could not be taxed on the theory that the full value of the coal mined represented the income, but was entitled to deduct therefrom such amounts as represented depreciation in the mining property.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ☜9.]

4. INTERNAL REVENUE ☜9—CORPORATE TAXES—ERRORS IN BOOKKEEPING.

Where amounts which should have been charged to the depletion of corporate assets were carried in a surplus account, income taxes imposed by Corporation Excise Tax Law cannot be based on such amounts, for that would allow the basing of taxes on mere bookkeeping.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ☜9.]

At Law. Action by the Forty Fort Coal Company against Frederick C. Kirkendall, as Collector of Internal Revenue. Sur rule to show cause why judgment for plaintiff should not be opened. Rule denied.

H. S. Drinker, Jr., of Philadelphia, Pa., and John R. Wilson, of Scranton, Pa., for plaintiff.

R. L. Burnett and J. M. McCourt, both of Scranton, Pa., for defendant.

WITMER, District Judge. Suit was instituted by the plaintiff to recover an excise tax assessed by the Internal Revenue Department and paid under protest. Judgment was entered December 24, 1915, for want of an affidavit of defense. This judgment the court is now requested to open, in order that the defendant may defend.

[1, 2] The proceedings in the case leading up to the judgment were not only regular, but the defendant's counsel previously asked for and obtained an extension of time for filing an affidavit of defense. The defendant, the Collector of Internal Revenue, and his department, were advised that, unless by a date previous to the entry of judgment an affidavit was forthcoming, judgment would be entered in default thereof. No request was made for a further extension of time to file an affidavit, nor was any effort made to open the judgment until almost five months after it had been entered. Since the entry of judgment four terms, viz., January, March, May, and June, have intervened, and yet it is contended that at this late day, without timely effort, this court, in the exercise of a discretionary power over its judgments, should open the judgment herein entered and grant a new trial of the action, so as to permit a defense that might have been interposed at the proper time, but for the unjustified failure and negligence of the defendant and his superiors in interposing a defense which is now suggested, and without the slightest hint that the same was prevented by fraud, mistake, or error.

In support of the proposition that this court has the authority implied in the motion, attention has been directed to the cases of King v. Brooks, 72 Pa. 363, and Ladd v. Stevenson, 112 N. Y. 325, 19 N. E. 842, 8 Am. St. Rep. 748. An effort to distinguish these cases from the one in hand, although the same could likely be successfully accomplished, will not be required, since the proposition is conclusively

negatived, in regard to the powers of the courts of the United States, by decision in Bronson v. Schulten, 104 U. S. 410, 415, 26 L. Ed. 797, and other authorities herein cited. However, it will not be denied that many of the state law courts have and exercise this power. In some states it is expressly conferred by statute; in others, it is considered one of the "inherent powers" of the law courts. In a state court, where a system has been adopted which amalgamates the equitable and law jurisdiction in one form of action, it is easy to see how relief might be granted on motion in a case like this. It would be a matter of no consequence whether the case be considered one at law or in equity; the form of action, and the court which had jurisdiction would be the same. It would be useless to examine the state decisions on this subject, for neither the practice of the state courts in exercising control over their judgments and administering equitable relief in a summary way, nor the statutes of the states, can determine the actions of the courts of the United States on this subject. "It is a question of power, and not of procedure. Jurisdiction at law and in equity are as separate in the federal courts as if administered by different tribunals." O'Connor v. O'Connor, 142 Fed. 449, 73 C. C. A. 565. Mr. Justice Miller, speaking for the court upon this point in Bronson v. Schulten, supra, said:

"In this country all courts have terms and vacations. The time of the commencement of every term, if there be half a dozen a year, is fixed by statute, and the end of it by the final adjournment of the court for that term. This is the case with regard to all the courts of the United States, and if there be exceptions in the state courts they are unimportant. It is a general rule of the law that all the judgments, decrees, or other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court. But it is a rule equally well established that after the term has ended all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct them; and if errors exist, they can only be corrected by such proceeding, by a writ of error or appeal, as may be allowed in a court which, by law, can review the decision. So strongly has this principal been upheld by this court that, while realizing that there is no court which can review its decisions, it has invariably refused all applications for rehearing made after the adjournment of the court for the term at which the judgment was rendered. And this is placed upon the ground that the case has passed beyond the control of the court."

The rule is of universal application, excepting cases wherein the court was influenced by clerical error or mistake. Sibbald v. United States, 12 Pet. 488, 9 L. Ed. 1167; Cameron v. McRoberts, 3 Wheat. 591, 4 L. Ed. 467; Phillips v. Negley, 117 U. S. 665, 6 Sup. Ct. 901, 29 L. Ed. 1013; Bronson v. Schulten, 104 U. S. 410, 415, 26 L. Ed. 797; Allen v. Wilson (C. C.) 21 Fed. 881; Baptist v. Trans. Co. (C. C.) 29 Fed. 180; Grames v. Hawley (C. C.) 50 Fed. 319; Klever v. Seawall, 65 Fed. 373, 12 C. C. A. 653; United States v. Fur Clippings, 106 Fed. 161, 45 C. C. A. 263; King v. Davis (C. C.) 137 Fed. 222; O'Connor v. O'Connor, 142 Fed. 449, 73 C. C. A. 565; United States v. One Trunk (D. C.) 155 Fed. 651; Electric Co. v. Import Co. (C. C.) 159 Fed. 492.

[3, 4] However the present petition sets up no defense to the plaintiff's claim. The defendant would have it appear that the plaintiff's claim was based merely on the fact that 15 cents per ton of coal mined by the plaintiff had been paid by it to the trustee of a mortgage of another company, and that this was the sole ground for the claim by the plaintiff that it should be allowed 15 cents per ton depletion on its excise tax for the years 1911, 1912, and 1913. Such, however, is not the fact, nor the basis of the plaintiff's claim as a reading of its statement of claim will show.

The twentieth paragraph of the statement of claim specifically avers that:

> The "company's property suffered actual depletion by reason of the mining of coal from said property to an amount for each ton so mined of at least 15 cents per ton, and the coal mined and sold by the said companies and each of them during the said tax years had, on the 1st of January, 1909, when the Excise Tax Law went into effect, a value in the ground of not less than 15 cents per ton."

This is the essential allegation of the complaint. It is to the effect that during these years the depreciation or depletion amounted to at least 15 cents per ton. The fact that this was the amount which the Forty Fort Coal Company paid over to the trustee of the mortgage was not the basis of the claim for refund, apparently, but was merely part of the history of the transaction, showing how the government happened to insist erroneously on the disallowance of the claim for depletion. The act of Congress requires the allowance of depreciation of property in a reasonable amount. It is not denied in the petition to set aside that the plaintiff's property was depleted to the amount of 15 cents for each ton of coal mined. The sole ground of the government's claim is based on a book entry made in 1912 or 1913, and corrected in 1914.

The decisions under the Excise Tax Law and under the Income Tax Law are uniform to the effect that the government cannot base a claim for taxes on mere bookkeeping. Industrial Trust Co. v. Walsh (D. C.) 222 Fed. 437; Baldwin Locomotive Works v. McCoach (D. C.) 215 Fed. 967; Id., 221 Fed. 59, 136 C. C. A. 660. In the latter case it was decided by the Circuit Court of Appeals for this circuit that mere reappraisement of property by a corporation on its books cannot form the basis of assessment of taxes on net income, even though the books show that during the tax year the value of the property was increased by the amount on which the government claims the regular rate of tax. The plaintiff here has admitted that during the year 1912 or 1913 a certain amount of money was carried on the books of the company in surplus account, but insists that such amount should have been properly noted on the books as depletion reserve.

In the statement of claim, however, the truth of which is in no way disputed, it was specifically averred that the amount so temporarily shown on the books as surplus was not properly surplus, or net income, or profit, but was merely a return of capital asset, being an amount which represented the minimum value of the coal in the ground. It requires no argument to demonstrate that, under a tax law

which makes an allowance for depletion or depreciation, if an owner has a ton of coal in the ground worth 15 cents, and he digs it up and sells it for 15 cents, the amount so received for it is not income, but is in fact only a return to him of the value of his coal as part of his capital asset.

The rule to open the judgment is denied.

⬪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes